1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9          FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

RONALD EVANS TAYLOR,              )    No. C 06-2981 MMC (PR)
                                  )
                                  )    **ORDER DENYING**
            Petitioner,           )    **PETITION FOR WRIT OF**
   vs.                            )    **HABEAS CORPUS**
                                  )
ROBERT L. AYERS, JR., Warden,     )
                                  )
            Respondent.           )
_____  )

16
17                        **INTRODUCTION**

18          On May 3, 2006, petitioner Ronald Taylor, a California state prisoner proceeding

19   pro se, filed, pursuant to 28 U.S.C. § 2254, the above-titled petition for a writ of habeas

20   corpus, by which he challenges a 2005 decision by the Board of Prison Terms ("Board")

21   that he is unsuitable for parole.  The Court dismissed the petition because petitioner had

22   failed to provide sufficient information for the Court to discern whether jurisdiction and

23   venue were proper in the Northern District.  Thereafter, petitioner filed an amended

24   petition.  The Court subsequently directed respondent to show cause why petitioner's

25   cognizable claims should not be granted, after which respondent filed an answer

26   addressing the merits of the petition and petitioner filed a traverse.  Having reviewed the

27   parties' respective submissions and the underlying record, the Court concludes petitioner

28   is not entitled to habeas relief based on the claims presented, and will deny the petition.

**BACKGROUND**

In 1990, petitioner cut the throat of victim Noel Pops Robinson ("Robinson"), after the two men had an argument.  In 1991, after a trial on charges arising from this incident, a jury convicted petitioner of second degree murder, see Cal. Pen. Code § 187, and intimidating a witness, see id. § 136.  (Am. Pet. at 3.)  The trial court sentenced petitioner to a term of fifteen years to life, plus nine years, in state prison.  (Id.)  In March 2005, the Board found petitioner unsuitable for parole, on the ground he "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Ans. Ex. 1, Part 1 (Parole Hearing Transcript) at 82.)

In reaching its decision, the Board accepted the following facts taken from the state appellate court opinion:  petitioner got into an argument with Robinson over whether petitioner should be on a specific street corner, selling "fake dope."  (Id. at 12, 16.)  Using a four to five inch blade, petitioner cut the apparently unarmed Robinson's throat from behind his left ear to his chin, a wound from which Robinson later died.  When asked "[W]hat's up?" by a friend who was passing by the scene of the crime, petitioner "indicated with a bragging type attitude that he had sliced Robinson's throat because he became angry when Robinson told him to stay off the street corner."  (Id. at 12–15.)  At the parole hearing, petitioner stated the facts were "pretty much like you read it," but that Robinson pushed him a few times before petitioner cut his throat, and that he did not brag about the crime immediately after committing it.  (Id. at 17.)

At the parole hearing, the Board reviewed petitioner's record, including the circumstances of his commitment offense, his criminal history, his behavior in prison, and the opinion of law enforcement on the question of parole.  With respect to the commitment offense, the Board found the crime "was carried out in an especially cruel and callous . . . [and] dispassionate manner," showing "a callous disregard for another human being."  (Id. at 82.)  The Board reviewed petitioner's lengthy criminal history, which included prior convictions for manslaughter, carrying a firearm, possession of stolen property, possession of controlled substances, parole violations resulting in parole

1    revocations, and arrests for assaults, drug possession, and battery.  (Id. at 20–27.)

2    Petitioner has a record of institutional misconduct, including three serious disciplinary

3    reprimands for refusing to work, mutual combat, and refusing to obey a direct order.   (Id.

4    at 39–40, 41.)  Petitioner also has received while in prison eleven minor disciplinary

5    reprimands for verbally assaulting staff, sexual harassment, and possession of more than

6    the allowed amount of tobacco.  (Id. at 42–43.)  The Board acknowledged that petitioner

7    had received high commendations for excellent work performance, that he had completed

8    paralegal training, that through his participation in large cooperative groups he had "made

9    positive contributions to the welfare of the general population," and had "fostered

10   beneficial relations between staff and inmates."  (Id. at 44–46.)  As the Board noted,

11   however, petitioner's psychological report included a concern about petitioner's "minimal

12   participation in self-help groups" and the view that his "[p]articipation in some of these

13   groups would at least demonstrate through actions some further attempts and efforts to

14   gain insight and improve [ ] himself."  (Id. at 51.)  Additionally, a representative of the

15   Los Angeles District Attorney voiced the district attorney's opposition to parole, and the

16   Los Angeles Sheriff's Office's opposition to parole was acknowledged on the record.  (Id.

17   at 64–65; 76–79.)  After a full hearing, during which all of the above evidence was

18   considered, the Board found petitioner unsuitable for parole.  (Id. at 63.)

19        In response to the Board's decision, petitioner filed state habeas petitions, later

20   denied, in the Los Angeles Superior Court, California Court of Appeal, and California

21   Supreme Court.  (Id. Exs. 2, 4 & 6.)  In 2006, petitioner filed the instant federal habeas

22   petition, alleging that (1) he was not provided a timely initial parole hearing; (2) there was

23   insufficient evidence to support the Board's decision that his release would pose an

24   unreasonable risk to public safety; and (3) he was provided ineffective assistance of

25   counsel.  (Order to Show Cause at 2.)

26   //

27   //

28   //

1

## DISCUSSION

2

**A.   Standard of Review**

3      This Court may entertain a petition for a writ of habeas corpus "in behalf of a

4  person in custody pursuant to the judgment of a State court only on the ground that he is

5  in custody in violation of the Constitution or laws or treaties of the United States."  28

6  U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

7      A district court may not grant a petition challenging a state conviction or sentence

8  on the basis of a claim that was reviewed on the merits in state court unless the state

9  court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or

10  involved an unreasonable application of, clearly established Federal law, as determined

11  by the Supreme Court of the United States; or (2) resulted in a decision that was based on

12  an unreasonable determination of the facts in light of the evidence presented in the State

13  court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412–13

14  (2000).  A federal court must presume the correctness of the state court's factual findings.

15  28 U.S.C. § 2254(e)(1).  Habeas relief is warranted only if the constitutional error at issue

16  had a "substantial and injurious effect or influence in determining the jury's verdict."

17  Penry v. Johnson, 532 U.S. 782, 795 (2001) (internal quotation and citation omitted).

18      The state court decision implicated by 2254(d) is the "last reasoned decision" of

19  the state court.  See Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991); Barker v.

20  Fleming, 423 F.3d 1085, 1091–92 (9th Cir. 2005).  Where there is no reasoned opinion

21  from the highest state court to have considered the petitioner's claims, the district court

22  looks to the last reasoned state court opinion, which, in this instance, is the opinion of the

23  Los Angeles Superior Court.  (Ans. Ex. 2); see Nunnemaker, 501 U.S. at 801–06;

24  Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000).

25

**B.   Petitioner's Claims**

26

  **1.    Delayed Parole Hearing**

27      Petitioner claims the Board violated his rights when he "did not receive his [ ]

28  initial board hearing, one year before his minimum eligible parole date . . . as mandated

4

by state law." (Am. Pet. at 7a.)  The superior court rejected petitioner's claim, finding that even if his initial parole hearing was late, petitioner did receive a parole hearing. (Ans. Ex. 2 at 3.)

Article III of the Constitution grants federal courts jurisdiction over actions only if the plaintiff has suffered an injury in fact, there is a "fairly traceable" causal connection between the injury and the defendant, and the injury will be redressed by a favorable decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).

In the instant case, petitioner cannot meet the last of the above three requirements. The sole means of redress for a delayed hearing is for the district court to order the Board to hold the hearing.  Consequently, assuming, arguendo, petitioner's allegations that the Board delayed his initial hearing are true, petitioner already has received redress for such delay, specifically, the 2005 parole hearing at issue in his petition.  Because petitioner has received the relief to which he would be entitled by the instant claim, the claim is no longer actionable under Article III and, accordingly, will be denied.

**2.      Sufficiency of Evidence**

Petitioner claims the Board failed to set a parole release date at his initial hearing, failed to accord him a fair and impartial hearing in 2005, was predisposed to deny him parole, and rendered a decision too soon after the hearing for such decision to have been the product of due deliberation.  (Am. Pet. at 8.)  The Court construes this claim as alleging the Board's failure to find petitioner suitable for parole violated his right to due process.  The superior court rejected the claim, finding there was some evidence to support the Board's decision, specifically, the facts of the commitment offense, petitioner's criminal history, his institutional misconduct, and his failure to participate in self-help programs for drug abuse.  (Ans. Ex. 2 at 1–3.)

A denial of parole complies with due process provided there is "some evidence" to support the parole board's decision.  A parole board's decision deprives a prisoner of due process if such decision is not supported by "some evidence in the record," or is otherwise "arbitrary."  See Superintendent v. Hill, 472 U.S. 445, 454–55 (1985); Sass v.

1   California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006).  Additionally, the

2   evidence underlying the parole board's decision must have "some indicia of reliability."

3   See McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002).  Accordingly, if a parole

4   board's determination with respect to parole suitability is to satisfy due process, such

5   determination must be supported by some evidence having some indicia of reliability.

6   Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005).

7        Here, in assessing whether there is "some evidence" to support the Board's denial

8   of parole, this Court must consider the regulations that guide the Board in making its

9   parole suitability determinations.  Pursuant to such regulations, "[t]he panel shall first

10  determine whether the life prisoner is suitable for release on parole[;] [r]egardless of the

11  length of time served, a life prisoner shall be found unsuitable for and denied parole if in

12  the judgment of the panel the prisoner will pose an unreasonable risk of danger to society

13  if released from prison."  15 Cal. Code Regs. § 2402(a).  Additionally, the regulations

14  enumerate various circumstances tending to indicate whether or not an inmate is suitable

15  for parole.  Id., § 2402(c)–(d).[1]  One circumstance tending to show an inmate's

16  unsuitability is that the crime was committed in an "especially heinous, atrocious or cruel

17  manner."  Id., § 2402(c).  Two factors that the parole authority may consider in

18  determining whether such a circumstance exists are whether "[t]he offense was carried

19  out in a manner that demonstrates an exceptionally callous disregard for human

20  suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in

21

22        [1]  The circumstances tending to show an inmate's unsuitability are: (1) the
     commitment offense was committed in an "especially heinous, atrocious or cruel
23   manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual
     offenses; (5) psychological factors such as a "lengthy history of severe mental problems
24   related to the offense;" and (6) prison misconduct. 15 Cal. Code Regs. § 2402(c).  The
     circumstances tending to show suitability are: (1) no juvenile record; (2) stable social
25   history; (3) signs of remorse; (4) commitment offense was committed as a result of stress
     which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7)
26   age is such that it reduces the possibility of recidivism; (8) plans for future including
27   development of marketable skills; and (9) institutional activities that indicate ability to
     function within the law. Id. § 2402(d).
28

relation to the offense." Id., § 2402(c)(1)(D) & (E).  In addition to these factors, the Board is to consider "all relevant, reliable information available." Id., § 2402(b).

It is now established under California law that the task of the Board is to determine whether the prisoner would be a danger to society if he or she were paroled.  See In re Lawrence, 44 Cal. 4th 1181 (2008).  Consequently, the constitutional "some evidence" requirement is that there exists some evidence that the prisoner constitutes such a danger, not simply that there exists some evidence of one or more of the factors listed in the regulations as considerations appropriate to the parole determination.  Id. at 1205–06.

In that regard, however, a parole authority's continued reliance on the circumstances of the commitment offense as the sole basis for denying parole can, over time, raise due process concerns.  See Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir. 2003).  "[I]n some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes."  Irons v. Carey, 505 F.3d 846, 854 (9th Cir. 2007).

Here, the Court cannot say the state court was unreasonable in concluding there is some evidence to support the Board's decision that petitioner would be a danger to society if released.  The record contains some evidence to support the Board's finding, including the circumstances of the commitment offense, and, contrary to petitioner's assertion, such other factors as petitioner's criminal history, his behavior in prison, and the views of law enforcement.

First, some evidence clearly exists to support the Board's determination that the circumstances of the commitment offense indicated petitioner presented a risk of danger to society if released.  The record contains evidence that the commitment offense was committed in an "especially heinous, atrocious or cruel manner," a circumstance tending to show parole unsuitability, see 15 Cal. Code Regs. § 2402(c), in that the offense "was carried out in an especially cruel and callous . . .[and] dispassionate manner," showing "a callous disregard for another human being."  Specifically, petitioner, in the course of a

verbal argument over the sale of fake cocaine, slit the throat of the victim, who later died of his wound.  Under such circumstances, the Board's description of the offense as "cruel and callous" is not unreasonable.  Although at some point in the future, the circumstances of the commitment offense may cease to have probative value as to the question of petitioner's dangerousness, they constitute, as of the time of the Board's decision, some evidence to support the Board's finding.

Additionally, petitioner's record of behavior in prison, as well as his criminal and social history constitute evidence of petitioner's unsuitability for parole.  While in prison, petitioner committed at least fourteen disciplinary infractions.  (Ans. Ex. 1, Part 1 at 39–40, 41.)  The Board also relied on the fact that while in prison petitioner "had not sufficiently participated in substance abuse programs," or other forms of self-help.  (Id. at 84.)  The Board also noted petitioner's "record of violent and assaultive behavior . . . [and] an escalating pattern of criminal conduct and violence," as described above.  (Id. at 83).  Additionally, the Board found petitioner "had a history of unstable and tumultuous relationships," and had "failed to profit from society's previous attempts to correct his criminality," as evidenced by his juvenile probation, adult probation, and detention in county jail.  (Id.)  In sum, the Board concluded petitioner had "failed to totally demonstrate evidence of positive change."  (Id. at 84.)

In short, the Board's decision is supported by some evidence, including evidence other than the circumstances of the commitment offense.

Petitioner's claims that the Board was predisposed to deny him parole and that it failed to provide him with a fair hearing likewise fail.  The record indicates that the Board made an individualized and reasonable decision based on both the particular historical and current facts of petitioner's case.  There is no evidence that the Board was predisposed to deny petitioner parole.

Accordingly, this claim will be denied.

**3.    Assistance of Counsel**

Petitioner claims that his parole counsel rendered ineffective assistance, resulting

in a denial of his Sixth and Fourteenth Amendment rights.  (Am. Pet. at 8a.)

Petitioner's claim is without merit.  Simply put, there is no clearly established right to counsel at parole suitability hearings.  In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court delineated the minimum standards of due process that must be provided parolees during parole revocation hearings.  The Court did not consider, however, whether parolees have a right to counsel or to appointed counsel at those hearings.  See id. at 489.  Thereafter, in Gagnon v. Scarpelli, 411 U.S. 778 (1973), the Supreme Court discussed at length whether the state is under a constitutional duty to provide appointed counsel in probation or parole revocation hearings.  In so doing, the Gagnon Court emphasized the essentially non-adversary nature of the hearings, the non-judicial character of the administrative decision-making body, and the likelihood that the proceedings would be significantly altered by the introduction of counsel.  See id. at 788–89.  Ultimately, rather than adopt a per se rule, the Supreme Court adopted a case-by-case approach:

> We thus find no justification for a new inflexible constitutional rule with respect to the requirement of counsel.  We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system.  Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness — the touchstone of due process — will require that the State provide at its expense counsel for indigent probationers or parolees.

Id. at 790 (emphasis added.)

Before Morrissey and Gagnon were decided, the Ninth Circuit, in Dorado v. Kerr, 454 F.2d 892, 896 (9th Cir. 1972), had held due process does not entitle California state prisoners to counsel at hearings conducted by the California Adult Authority.  Subsequently, a three-judge district court panel cited Dorado as an accurate reflection of the underlying concerns and objectives expressed by the Supreme Court in Morrissey and Gagnon, as well as Wolff v. McDonnell, 418 U.S. 539 (1974), in which the Supreme Court had found no constitutional right to counsel at prison disciplinary proceedings.  See Burgener v. California Adult Authority, 407 F. Supp. 555, 559 (N.D. Cal. 1976).  This

9

1  Court agrees and, consequently, concludes there is no clearly established authority that

2  inmates have a right to counsel at parole suitability hearings.

3          Accordingly, this claim will be denied.

4                                      **CONCLUSION**

5          Because the record contains, at a minimum, some evidence to support the Board's

6  determination that petitioner would present an unreasonable risk of danger to society if

7  released, and because petitioner has made an insufficient showing as to his entitlement to

8  relief on his other claims, the Court finds the state court's determination was neither

9  contrary to nor an unreasonable application of clearly established Supreme Court

10  precedent, nor can the Court say it was based on an unreasonable determination of the

11  facts.

12          Accordingly, the petition for a writ of habeas corpus is hereby DENIED.

13          The Clerk shall enter judgment and close the file.

14          **IT IS SO ORDERED.**

15  DATED: June 16, 2009

16

17  _____
    MAXINE M. CHESNEY
18  United States District Judge

19

20

21

22

23

24

25

26

27

28